Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
E. Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:      rob@hbsslaw.com
                johnd@hbsslaw.com
                toryb@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shirley Haenfler, on behalf of herself and all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Safeco Insurance Company of America, | |
| Defendant. | |

TABLE OF CONTENTS

Page

I.      INTRODUCTION..................................................................................... 1

II.     PARTIES................................................................................................. 2

III.    JURISDICTION AND VENUE............................................................... 2

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW ......................... 3

V.      SAFECO IMPROPERLY REFUSES TO DISCLOSE AND STACK
        HAENFLER'S COVERAGE................................................................... 5

VI.     CLASS ACTION ALLEGATIONS....................................................... 12

FIRST CLAIM FOR RELIEF  (DECLARATORY JUDGMENT)................................. 15

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) ..................................... 15

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS)............................. 16

FOURTH CLAIM FOR RELIEF (INDIVIDUAL DAMAGES FOR BAD FAITH) ...... 17

PRAYER FOR RELIEF ................................................................................................ 18

## I.    INTRODUCTION

1.      Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims, unless the insurer employs one of two easy methods to avoid stacking – either (1) including a "statement" in the policy "inform[ing]" the insured of her "right to select one policy or coverage" as "applicable to any one accident," or (2) sending the insured, within thirty days of being notified of the accident, written notice of her "right to select one policy or coverage." A.R.S. § 20-259.01(H). Here, the insurer did neither.

2.      "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages can exist, and those coverage limits can be added together to provide "stacked" benefits for a single claim. Each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

3.      When an insured is injured, insurance companies must find coverage for the insured, identify available coverages and limits, inform the insured accurately about available coverages and benefits, reasonably investigate the claim and applicable law, construe the policy in accordance with known law, treat its insured fairly and reasonably,

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co*., 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

give the insured's interests equal consideration, and not conceal or misrepresent pertinent policy provisions, benefits or coverages.

4.     In handling UM/UIM claims for its customers with multiple covered vehicles, Defendant Safeco Insurance Company of America ("Safeco") has breached all of these duties as well as the policies themselves. As a matter of standard policy and practice, Safeco applied a single UM/UIM coverage limit to Plaintiff's claim even though Safeco neither inserted the statutorily-required "right to select" statement in its policy, nor timely advised class members of that right in writing. Safeco, therefore, was responsible for stacking, and for disclosing and providing UM/UIM coverage up to the stacked limits required by Arizona law and the policies but failed to do so. Having failed to utilize either anti-stacking option permitted by Arizona law and having failed to disclose the existence of stacked coverages to its insureds, Safeco breached its contractual and legal duties to its customers and failed to adjust their claims properly.

5.     Plaintiff Shirley Haenfler, an insured under the Safeco policy purchased by Donald and Roiann Silliman, brings this action pursuant to (a) 28 U.S.C. § 2201 & 2202 for a declaratory judgment regarding her rights and the rights of the Class under their Safeco auto insurance policies ("the Safeco Policy" or "the Safeco Policies") and (b) state law based on diversity jurisdiction.

## II.     PARTIES

6.     Plaintiff Shirley Haenfler is a resident and citizen of Arizona. She is the mother of the decedent Roiann Silliman. She is the sole statutory claimant for the wrongful death of Ms. Silliman under Arizona law, including A.R.S. §§ 12-611 and 12-612.

7.     Defendant Safeco is an insurance company incorporated under the laws of New Hampshire, with its principal place of business in Massachusetts, but which does business in the state of Arizona.

## III.     JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in

stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of Arizona, and Safeco is a citizen of New Hampshire and Massachusetts (where it is incorporated and has its principal place of business, respectively).

9. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Safeco Policies were issued in this District.

10. Whenever it is alleged in this Complaint that Safeco did any act or thing, it is meant that Safeco and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Safeco or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Safeco and its officers, agents, servants, employees or representatives. Specifically, Safeco is liable for the actions of its affiliates, officers, agents, servants, employees and representatives.

## IV. GENERAL ALLEGATIONS AS TO ARIZONA LAW

11. Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

12. Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174 P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197, quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000).

13.     Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." A.R.S. § 20-259.01(H).

14.     "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018).

15.     The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

16.     "Subsection (H) is not exclusively limited to circumstances where multiple policies exist—it applies to 'multiple policies or coverages.'" *Hoelbl v. GEICO*, No. 1 CA-CV 11-0703, 2012 WL 5589909 (Ariz. App. Nov. 15, 2012), *review denied* (Apr. 23, 2013); *see also GEICO v. Tucker*, 71 F. Supp. 3d 985 (D. Ariz. 2014) (following *Hoelbl*, and explaining that for applying subsection (H) "it did not matter if those multiple vehicles were covered by the same policy or separate policies.").

17.     Under Subsection (H), "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages). *See also Heaton, et. al v. Metropolitan Group Property and Casualty Ins. Co.*, No. 2:21-CV-00442-SRB (D. Ariz. Oct. 19, 2021) ("[M]ultiple coverages exist when multiple vehicles are insured under a single policy that contains UM/UIM coverage. . . . Having found that Ms. Heaton and Ms. Bell have multiple UM/UIM coverages under the

statute by virtue of insuring multiple vehicles, the Court concludes that both Ms. Heaton and Ms. Bell may stack their available coverages because Metropolitan did not adhere to the requirements of A.R.S. § 20-259.01(H) to prevent stacking.").

18.     Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiff. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

19.     The contractual covenant of good faith and fair dealing also includes an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[2]

## V.    SAFECO IMPROPERLY REFUSES TO DISCLOSE AND STACK HAENFLER'S COVERAGE

20.     On November 4, 2021, Hamid Musa Elgubori was operating a tractor trailer traveling west on SR260.

21.     Plaintiff's son-in-law, Donald Silliman, was operating a 2019 Toyota Highlander, VIN 5TDYZRFH1KS314458 ("the Highlander") traveling east on SR260. Plaintiff's daughter, Roainn Silliman, was a passenger in the vehicle. The time was approximately 9:30 a.m. and they were on their way to Show Low to winterize their home there.

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

22. According to reports from the Arizona Department of Public Safety, Mr. Egubori was speeding with defective brakes and lost control of his vehicle colliding with and killing insureds Donald and Roiann Silliman.

23. Mr. Elgubori negligently failed to slow down and after his tractor trailer tipped over onto its side, it collided with the insureds' vehicle.

24. Mr. Elgubori was negligent in causing the accident, and he was the sole cause of the accident.

25. As a result of the accident, Donald and Roiann Silliman sustained severe blunt-force injuries and were pronounced deceased at the scene.

26. Given the severity of the insureds injuries and their death as a result of the accident, the insureds were underinsured as to Plaintiff Haenfler. *See* A.R.S. § 20-259.01(G).

27. The damages of those injured by the Mr. Elgubori exceed the amount of insurance available to Mr. Elgubori, and Mr. Elgubori's insurer has offered policy limits.

28. To protect their family members (as well as themselves and others in their vehicles) from uninsured or underinsured tortfeasors, Donald and Roiann purchased UM/UIM insurance through Safeco. At the time of loss, Donald and Roiann Silliman were insured under a Safeco auto insurance policy. The Safeco Policy insured two vehicles: a 2003 Dodge Ram 3500, VIN 5TDYZRFH1KS314458 and a 2019 Toyota Highlander, VIN 5TDYZRFH1KS314458. Each vehicle's coverage provided Plaintiff with UIM benefits of $100,000 per person and $300,000 per occurrence.

29. Plaintiff Haenfler's damages for the wrongful death of Roiann Silliman attributable to Mr. Egubori's fault exceed the available amount of Mr. Egubori's bodily injury liability coverage, and the UIM coverages on the two vehicles insured under the Safeco policy.

30. In the Safeco Policy, Safeco agreed to pay as follows:

> We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor**

**vehicle** because of **bodily injury**: 1. Sustained by that **insured**; and 2. Caused by an accident.

…

We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**: 1. Sustained by that **insured**; and 2. Caused by an accident.

31.     Shannon Herron, a statutory beneficiary of Donald Silliman, called Safeco within a week of the November 4, 2021 accident to report the claim, putting Safeco "on notice" of the accident.

32.     On January 6, 2022, Safeco sent a letter stating, "We wish to advise you that if a future claim is made by any person for Uninsured or Underinsured Motorist Bodily Injury Coverage and multiple policies or coverages within the same policy apply to the same accident, only one of the policies and one coverage limit within the policy will apply to the accident. You will be asked to select the one policy and coverage limit that will apply."

33.     Safeco had notice of the accident more than 30 days before it sent the January 6, 2022 letter. The January 6, 2022 letter does not, therefore, satisfy the requirements of A.R.S. § 20-259.01(H).

34.     On July 28, 2022, Plaintiff, through her counsel, sent Safeco a letter documenting Safeco's policy requirements and requesting documentation or an explanation that would prevent Safeco from tendering stacked UIM coverages.

35.     On June 21, 2022, Safeco informed Plaintiff that the applicable policy limit for the UIM claim was $100,000.

36.     Safeco did not notify Plaintiff or any other class member that if the required notice was not sent within thirty days of the accident, Safeco would, under Arizona law, owe its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

37.     The Safeco Policy under which Plaintiff was insured is Safeco's standard form Policy for personal (i.e., non-commercial) auto policies.

38.     The Safeco Policy fails to include a statement informing the insureds of their "right to select one policy or coverage" as applicable to any one accident. As used herein, "the Safeco Policy" or the "Safeco Policies" means any personal auto policy issued to an Arizona insured, all of which fail to include a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident.

39.     The Safeco Policy does not comply with A.R.S. § 20-259.01(H) because (a) it does not limit the UM/UIM coverage on each covered vehicle so only one "policy or coverage, selected by the insured," shall be applicable to any one accident, and (b) it does not inform the insured of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident. It merely states that the limit of liability for Uninsured and Underinsured Motorist Coverage is "shown in the Declarations for each person for Underinsured Motorists Coverage," no matter how many vehicles are listed:

**LIMIT OF LIABILITY**

A.  The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.

Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1.  **Insureds**;

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the accident.

40.     The declarations page of the Safeco policy also does not inform the insured of their "right to select one policy or coverage."

41.     Safeco also did not, within thirty days of being notified of the November 4, 2021 accident at issue here, send Plaintiff or any other insured under the Policy any written notice of Plaintiff's "right to select one policy or coverage."

42.     As a general practice, whenever Safeco fails to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Safeco does not provide stacked benefits unless specifically requested by the insured to do so.

43.     These were simple options—informing the insureds of their rights in the policy itself or by written notice within 30 days after notice of the accidents—and either approach would have precluded stacking the UM/UIM coverages on class members' vehicles covered under the Safeco Policies.

44.     Safeco, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Safeco Policies.

45.     Safeco never disclosed or provided stacked UIM coverages to Plaintiff. Safeco, therefore, has denied Plaintiff benefits to which she is entitled under the Safeco Policy and Arizona law.

46.     As a general practice, Safeco does not disclose or provide stacked UM/UIM coverages to Plaintiff or class members under the Safeco Policies after a covered accident. Safeco has provided stacked limits to insureds who specifically requested it do so, in effect silencing the squeaky wheels while continuing to underpay Plaintiff and virtually all class members in violation of its contractual and legal duties as a first-party insurer.

47.     Safeco knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

48.     Safeco knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

49.     Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, USAA, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right

to select which policy or coverage will apply. For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

50.     Safeco knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

51.     Safeco chose not to follow those practices.

52.     Safeco on limited occasions in Arizona has acknowledged, tendered or paid stacked UM or UIM limits when requested by the insured to do so.

53.     Safeco failed to pay Plaintiff and the Class stacked UM/UIM coverages to which they were entitled.

54.     Safeco failed, as to Plaintiff and the Class, to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Safeco Policies.

55.     Safeco and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Safeco Policies.

56.     On information and belief, Safeco received legal advice that its policy language and failure to give proper notice violated Arizona law, but Safeco disregarded the advice it received and willfully failed to investigate and inform itself on Arizona law on stacked UM/UIM coverages, as to Plaintiff and the Class.

57.     On information and belief, Safeco received legal advice regarding its obligations to provide stacked UM/UIM coverages and was advised that its failures to pay stacked UM/UIM coverages likely violated Arizona law. Safeco disregarded that legal advice.

58.     On information and belief, Safeco willfully concealed the existence of stacked UM/UIM coverages from Plaintiff and the Class.

59.     Safeco has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM coverage would be entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

60.     Instead, when paying UM or UIM benefits, Safeco has a practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment. Safeco does so despite knowing the insured is entitled to the payment without signing a release, and that it will issue payment of that benefit even if the insured declines to execute the release.

61.     Safeco's failures are both unreasonable, intentional, and in conflict with well-established Arizona law.

62.     Safeco's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

63.     Safeco's concealment of its statutory obligation and its actual coverage limits, and its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages, have led to underpaying Plaintiff's UIM claim, as well as the claims of hundreds or thousands of other UM/UIM claims, and thus to Safeco paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VI.    CLASS ACTION ALLEGATIONS

64.    This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

65.    The class consists of the following:

> All persons insured under one or more Safeco Policies issued in Arizona to the same purchaser covering them for multiple vehicles at the time of a covered loss who, from the earliest allowable time to the date judgment enters, received UM/UIM benefits in an amount equal to the limits of only one of the UM/UIM coverages under the applicable policy or policies where the purchaser was not notified in writing by Safeco within thirty days after it received notice of the accident of the purchaser's right to select one policy or coverage.

66.    While the exact number of members cannot be determined, the class consists at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Safeco.

67.    There are questions of fact and law common to the class, including the following:

i.      Whether the Safeco Policy complies with Subsection (H) of A.R.S. § 20-259.01, allowing Safeco to preclude stacking;

ii.     Whether Safeco failed to send timely notice to its insureds after an accident of their right to select one UM/UIM policy or coverage;

iii.    Whether Safeco concealed or failed to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Safeco Policies;

iv.     Whether Safeco failed to stack UM/UIM policies or coverages;

v.      Whether, through the foregoing practice, Safeco breached its contracts with its insureds;

vi.   Whether, through the foregoing practice, Safeco breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

vii.  Whether, through the foregoing practice, Safeco caused and will continue to cause harm to its insureds;

viii. Whether Safeco is obligated to search or reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law;

ix.   Whether Plaintiff and the Class are entitled to declaratory relief;

x.    Whether Safeco has an unlawful practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment;

xi.   Whether Safeco's above-referenced conduct as to the Class warrants an award of compensatory damages;

xii.  Whether Safeco's above-referenced conduct as to the Class warrants an award of punitive damages; and

xiii. Whether Plaintiff and the class are entitled to an award of attorney's fees.

68.   Plaintiff has the same interests in this matter as all other members of the class, and her claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members he seeks to represent. Plaintiff and all class members have been harmed by Safeco's common course of conduct as outlined herein. The harm to each class member was caused by Safeco's wrongful conduct.

69.   Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the class members.

70.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual class members would create a risk of

inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

71.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Safeco's actions are generally applicable to the class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the class as a whole.

72.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

73.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Safeco's conduct constitute bad faith under Arizona law—will materially advance the litigation.

74.    Absent a class action, most of the members of the class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Safeco has concealed, failed to disclose or misled class members about their rights and those class members will remain ignorant of their potential claims against Safeco unless court-supervised notice is ordered.

75.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of other members of the Class.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

76.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

77.     Plaintiff and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Safeco Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Safeco's obligation to disclose the existence of stacked UM/UIM coverages, and whether Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

78.     Under the circumstances, Plaintiff and the Class are entitled to a judicial declaration of their rights under the Safeco Policies, specifically that they are entitled to stack UM/UIM coverages for multiple insured vehicles under the Safeco Policies, that Safeco was required to disclose the existence of stacked coverages to them, and that Safeco was required to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits once it knew its Safeco Policies and its practices did not allow it to preclude stacking under Arizona law.

79.     This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

80.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

81.     Each Class member (including Plaintiff) is a party to one or more of the standardized Safeco Policies.

82.     Safeco further breached those contracts by concealing or failing to identify, acknowledge, disclose, and pay the stacked UM/UIM limits of the Safeco Policies under

Arizona law, despite Safeco's failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

83.     The Class (including Plaintiff) has been and continues to be damaged by Safeco's breaches of contract.

84.     This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**THIRD CLAIM FOR RELIEF**
**(BAD FAITH AS TO THE CLASS)**

85.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

86.     Inherent and implied in the Safeco Policy is a covenant of good faith and fair dealing owed to Plaintiff. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

87.     The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for

its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. At 160, 726 P.2d at 576.

88.     The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.

89.     Safeco acted objectively and subjectively unreasonably as to the Class by concealing, or failing to identify, acknowledge, disclose and pay benefits up to the stacked UM/UIM limits of the Safeco Policies, despite Safeco's failure to comply with A.R.S. § 20-259.01(H).

90.     Safeco did so, even though it knew or should have known the Safeco Policies failed to comply with A.R.S. § 20-259.01(H). The Class seeks as damages the value of the unpaid UM/UIM stacking benefits under Arizona law.

91.     Safeco, therefore, acted in bad faith toward Plaintiff and the Class.

92.     Safeco's conduct as to the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

93.     Safeco is, therefore, liable to the Class for punitive damages.

94.     This claim arises out of contract and the Class therefore is entitled to attorney's fees may have attorney's fees under A.R.S § 12-341.01.

## FOURTH CLAIM FOR RELIEF
### (INDIVIDUAL DAMAGES FOR BAD FAITH)

95.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

96.     Safeco acted objectively and subjectively unreasonably as to Plaintiff by concealing, or failing to identify, acknowledge, disclose and pay benefits up to the stacked UM/UIM limits of the Safeco Policies, despite Safeco's failure to comply with A.R.S. § 20-259.01(H).

97.     Safeco's conduct and failure to provide additional UIM benefits was in bad faith, and Plaintiff was thereby damaged.

98.     Safeco's conduct was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to Plaintiff.

99.     Safeco is, therefore, liable to Plaintiff for punitive damages.

100.    This claim arises out of contract and Plaintiff therefore is entitled to attorney's fees under A.R.S § 12-341.01.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Safeco as follows:

A.      An order appointing Plaintiff as class representative and Robert Carey as class counsel and certifying the First and Second Claims for Relief under Rule 23(b)(2), and/or (b)(3), and the Third Claim for Relief under (c)(4).

B.      A declaratory judgment that Plaintiff and the Class are entitled to stacked UM/UIM coverages under the Safeco Policies, and a declaration establishing or order mandating that the Class is entitled to disclosure of the existence of stacked coverages.

C.      Judgment in favor of Plaintiff and the Class on their Claims for Relief.

D.      Compensatory damages (class) in an amount to be proven at trial, on the Second and Third Claims for Relief.

E.      Compensatory damages (individual) in an amount to be proven at trial, on the Fourth Claim for Relief.

F.      Attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

G.      For costs incurred herein.

H.      Pre-judgment and post-judgment interest.

I.      Punitive damages in an amount to be proven at trial, on the Third and Fourth Claims for Relief.

J.      For any other relief permitted by Law.

Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38 for all actions so triable.

Dated: May 11, 2023                          Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Robert. B. Carey*
    Robert B. Carey
    John M. DeStefano
    E. Tory Beardsley
    11 West Jefferson Street, Suite 1000
    Phoenix, Arizona 85003
    Telephone: (602) 840-5900
    Facsimile: (602) 840-3012
    Email:    rob@hbsslaw.com
            johnd@hbsslaw.com
            toryb@hbsslaw.com

FEDER LAW OFFICE, P.A.

By: *s/ Bruce Feder*
    Bruce Feder (SBN 004832)
    2930 E Camelback Road
    Phoenix, AZ 85016
    Telephone: (602) 257-0135
    Facsimile: (602) 954-8737
    Email:    bf@federlawpa.com

GOLDSTEIN WOODS & ALAGHA

By: *s/ Evan Goldstein*
    Evan Goldstein (SBN 011866)
    706 E Bell Rd., Ste. 200
    Phoenix, AZ 85022
    Telephone: (602) 569-8200
    Email:    egoldstein@gwalawfirm.com

*Attorneys for Plaintiff*